HUGHES *et al. vs.* HUGHES *et al.*

1. A motion in arrest of judgment is unknown to courts of equity, and exceptions based on the denial of that motion cannot avail the plaintiffs in error.

2. Objections to a bill in equity for want of parties must be made by special demurrer; a general demurrer for want of equity will not embrace them.

3. If there was error in not considering the general demurrer, it did not hurt the plaintiff in error, because there is equity in the bil', and if considered, it should have been overruled.

4. On a bill for specific performance of a parol agreement or gift of lands by father to son brought against the claimants of a year's support, as the family of the father, and by the heirs of the son, the sayings of the father and of his widow, who is the defendant in the bill, claiming the year's support for herself and minor children, are admissible in behalf of the son's heirs; and the administrator of the son not being a party of record, and in no wise interested, is a competent witness to prove those sayings. 54 *Ga* , 624.

5. Objections that the verdict is contrary to the charge of the court, however specifically set out, are equivalent to an objection that the verdict is contrary to law, and are embraced in that single objection, for if the charge be not law, the verdict will be upheld, though against the illegal charge.

6. Under the Code of Georgia, any person who swears to his knowledge of hand-writing may give his opinion thereon, to be weighed by the jury. Code, §3839.

7. Exclusive possession of lands of the father by the son for seven years is conclusive presumption of a gift, and conveys title to the son, unless the latter disclaims title, or the evidence shows a loan, or claim of dominion by the father acknowledged by the son, and it is for the jury to say whether the evidence be sufficient to show such exclusive possession, without disclaimer or loan or dominion, each point to be settled by the weight of the evidence thereon. Code, §2664.

8. Though a specific performance will not be decreed on a mere voluntary agreement or gratuitous promise, yet if possession be given under such agreement or gift, upon a meritorious consideration, such as blood or close relationship by affinity, and valuable improvements be made on the land by reason of faith in that promise or agreement, the performance thereof will be decreed, and slight improvements, if of a valuable and permanent character, will suffice. Code, §3189; 33 *Ga.*, 9; 54 *Id.*, 624.

9. In the former adjudications upon facts disclosed in this record, no principle antagonistic to the views above was decided. The cases then were either between judgment creditors of the father, whose liens attached before seven years possession by the son, or where, for lack of power to make proper parties at law, a specific performance could not be decreed. The issue now is made for the first time, whose was the title at the death of the father,—was it in him or in the son? If in the father, his family are entitled to a year's support out of it; if in the son, they are not; or if, at the father's death, the son was entitled to a specific performance, they are not. 59 *Ga.*, 136; 67 *Id.*, 19; 70 *Ga.*, 273.

10. The verdict is supported by evidence, not only parol, but written; the charge and refusals to charge embody practically the points herein ruled, and no material error appears; the judgment overruling the motion for a new trial is therefore right.

Judgment affirmed.

December 4, 1883. (Head-notes by the court.)

JACKSON, Chief Justice.

[Martha E. Hughes, widow of George W. Hughes, in behalf of herself and minor children, filed a bill against Mary L. Hughes, Wilberforce Daniel, sheriff of Richmond county, and Thomas M. Berrien, administrator of William W. Hughes, of Burke county. The bill alleged, in brief, that William W. Hughes owned, besides much other property, a tract of land known as the Hughes "Summer Place," and desiring to make provision for his son, George W. Hughes, gave it to him in 1865; that the son went into possession under this gift, and so remained until his death in 1872, and complainants have since so continued; that there is no indebtedness against the estate of George W. Hughes, and complainants are his only heirs at law; that he claimed the place as his own, and made no payment of

rent to his father, who also recognized it as belonging to him; that the son erected substantial improvements upon the property· that both the father and son had died in 1872; that the widow of the father, Mary L. Hughes, had applied for a twelve months' support, and $3,000.00 had been awarded to her, to which award exceptions were filed; that certain lands in Burke county had been sold, and the money brought into court for distribution; that she received by agreement $1,500.00, and permitted the balance to be distributed among the creditors of her hus- band; that, in spite of this, she obtained an execution for the balance of her twelve months' support against the ad- ministrator of her husband, and caused it to be levied upon the " Summer Place." The prayer was for injunction to prevent the execution from proceeding against the "Sum- mer Place" and for specific performance of the parol gift of the decedent. Discovery was waived.

The answer denied all the material allegations of the bill, especially that the widow had waived or renounced any claim on account of the year's support, or that the son held the property under a gift from his father; but asserted that his possession was merely permissive, and that the improvements he had placed upon the land were only such as to make it available to him in making a sup- port, and were not made with reference to any parol gift or contract.

It is unnecessary to set out the evidence in detail.

The jury found for the complainants    Defendants made a motion in arrest of judgment, and also a motion for new trial.    Among the grounds taken were the following:

(1.) Because a general demurrer to the bill for want of equity was on file and undisposed of at the time of the trial.

(2.) Because the verdict was contrary to various charges of the court specifically set out.

(3.) Because the court refused to give the following requests in charge:  " Nor can complainants recover, if

there is evidence of loan, or claim of dominion of the father acknowledged by George, or known to George and acquiesced in by him, either in express terms or by silence, after hearing of his father's claim of· dominion."

" There is no such thing as a parol title to land in Georgia, and if a party seeks to show title by possession without payment of rent, etc., under section 2664 of the Code, and his evidence shows, or he admits, that he never had. written title, that is a deed, he cannot establish his claim under said section of the Code."

" To entitle a complainant to a specific performance of a parol contract for the sale of land, the contract must first be established with reasonable certainty, and the consideration claimed to have been paid or rendered therefor must be clearly and satisfactorily proven to have been paid or rendered in pursuance of that contract; otherwise, a specific performance of the alleged contract should be refused."

" A parol contract for land, like the reformation of a deed by parol proof, should be made out so clearly and satisfactorily as to leave no reasonable doubt as to the agreement; it is a serious matter to substitute a parol sale of real estate for a deed."

(4.) Because the court charged as follows : " Exclusive possession by a child of lands originally belonging to a father, without payment of rent, for the space of seven years, shall create conclusive presumption of a gift, and convey title to the child, unless there is evidence of a loan, or claim or dominion by the father acknowledged by the child. If you believe, therefore, from the evidence, that George W. Hughes went into exclusive possession of this land, and remained there seven years during the lifetime of the father, without payment of rent or claim of dominion by the father acknowledged by the child, then this is conclusive presumption of a gift of the land and conveys title; and if you find this to be true, you will find for the complainants. Again, if you believe from the evidence that William W. Hughes made a verbal gift of the

land levied on to his son, George W. Hughes, who went into possession of the same and has made valuable improvements upon the faith thereof, he is entitled to a decree requiring the administrator to specifically perform his contract; and if you so find, you will decree by your verdict that the administrator be required to execute titles to this land to complainants.

(5.) Because the court erred, over defendants' motion to require complainants to make the administrators parties complainants, in allowing the case to proceed with no other complainants named in the bill but the widow of George Hughes, for herself and as next friend of her children, when it was true that the administrators were still in office, never having been dismissed from the administration, as shown by the evidence, and there was no evidence of the assent of the administrators that the heirs of George W. Hughes might bring suit in their own right.

(6.) Because the court allowed, over objection of defendants' counsel, the evidence of Walter A. Clark, one of the administrators of George W. Hughes, which testimony was as to what Mrs. Mary L. Hughes said to him about William W. Hughes giving the place to George, and her desire on that subject. [The objection was that the testimony was irrelevant and tended to prejudice the minds of the jury.].

(7.) Because the court admitted a letter purporting to have been written by William W. Hughes, upon the following proof alone: Walter A. Clark, sworn, said, " I think that the letter and signature are the hand-writing of William W. Hughes; I recognize that as his hand-writing; I never saw him write, and I never received any letters from him; I have seen writing of his; I did not know it to be his hand-writing, but others told me it was his writing; my opinion of his writing is based on writings which others have told me was his hand-writing, and in that way I got my knowledge of his hand-writing, and recognize this letter as his." The court asked the witness,

v 72—13

Walter A. Clark, if he recognized this letter as the hand-writing of W. W. Hughes, and witness answered, he did. Whereupon the court admitted the letter as evidence.

(8.) Because the court erred, after reading sections 2664 and 3189 of the Code, in concluding his charge, in substance, as follows: "And now, gentlemen, I charge you that if you find that William W. Hughes gave the 'Summer Place' to his son, George W. Hughes, and he went into possession of it without payment of rent for seven years, as contemplated in section 2664 of the Code, then you would be authorized to find for complainants; or if George went into possession of the land, as contemplated by section 3189, and made valuable improvements thereon, then it matters not whether he remained on it seven years or not; this of itself was sufficient to give him the right to a specific performance, and you will so find."

(9.) Because the verdict was contrary to law and evidence.

Both the motion in arrest of judgment and the motion for new trial were overruled, and defendants excepted.]